IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

Dirk Christianson,                                )
                                                  )
                              Plaintiff,          )
                                                  )
          vs.                                     )
                                                  )          Case No.:_____
Daniel B. Wicklander, James Valandra, Jeffrey     )
Turning Heart, John Martin Chimel, Amanda         )
Dunn, Jesse Feist, Tristan Weinfortner,           )          **COMPLAINT**
Samantha Kamphuis, Jericho Swanson, and           )          **AND JURY DEMAND**
Carissa Schumaier, individually and as McLean     )
County Correctional Officers and as McLean        )
County Detention Center Medical Staff.            )
                                                  )
                              Defendants.         )

**¶1.**    **COMES NOW** Plaintiff, Dirk Christianson, by and through his undersigned counsel, and

for his cause of action against the Defendants states and alleges as follows:

**PARTIES**

**¶2.**    Plaintiff, Dirk Christianson ("Christianson"), was, at all times material herein, a citizen of

the United States and a resident of North Dakota.

**¶3.**    Upon information and belief, Defendants, Daniel B. Wicklander, James Valandra, Jeffrey

Turning Heart, John Martin Chimel, Amanda Dunn, Jesse Feist, Tristan Weinfortner, Samantha

Kamphuis, Jericho Swanson, and Carissa Schumaier were jailers at McLean County Detention

Center (hereinafter "MCDC Jailers"), were at all times material herein, citizens of the United States

and correctional officers at MCDC.  MCDC Jailers are sued in their individual capacities, and their

official capacity for misconduct under color of state law.

**¶4.**    Upon information and belief, MCDC Jailers were, at all times material herein, citizens of the

-1-

United States and MCDC medical staff and MCDC correctional officers. MCDC Jailers are sued in their individual capacity and their official capacity for misconduct under color of state law.

## JURISDICTION AND VENUE

¶5.     Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

¶6.     This is an action for money damages for the violation of Plaintiff's Civil Rights resulting from the deliberate indifference of the Defendants as named individually and/or in their official capacities.

¶7.     Claims asserted in this case arise under Federal Law, Plaintiff is also asserting claims under State Law. Defendants were at all time material herein acting under color of State Law.

¶8.     Plaintiff brings this action pursuant to 42 U.S.C. §1983 and §1988, the Eighth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §1331 and §1343(a)(3). The aforementioned statutory and constitutional provisions confer original jurisdiction on this Court over this action. This court has jurisdiction of ancillary pendant state claims under 28 U.S.C.§1367.

¶9.     This Court has personal jurisdiction over the Defendants because they are, or were at all relevant times, found within, domiciled or resided within, organized under the laws of, and/or maintaining a principal place of business in North Dakota.

¶10.     Venue is proper and appropriate in this District pursuant to 28 U.S.C. §1391 because one or more Defendants reside in North Dakota, a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this District, and because the Defendants are subject to the Court's personal jurisdiction as indicated above.

## FACTUAL BACKGROUND

¶11.    Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

¶12.    Christianson suffered constitutional violations during his incarceration at MCDC between December 2018 and April 2019.

¶13.    Defendants' deliberate indifference to Christianson's serious medical needs proximately caused an infection and ultimately required the amputation of his leg and violated his well settled Federal Civil Rights.

¶14.    Christianson suffered severe and persistent infection which ultimately became septic and resulted in the amputation of his left leg.

¶15.    Christianson was born in 1960, making him 59-years-old at the time of his amputation.

¶16.    During December 2018 Christianson was incarcerated in MCDC awaiting charges on terrorizing and felonious restraint.

¶17.    Throughout the course of Christianson's incarceration, he reported ongoing medical problems.

¶18.    On January 23, 2019, Christianson made a written request for medical attention with complaints of high blood pressure, dizziness, weakness, edema, pain and swelling in his legs.  These conditions were ignored by the Defendants.

¶19.    On February 10, 2019, Christianson made a written request for medical attention with complaints of neck, shoulder, arm, and chest pain after a fall previously reported on February 8, 2019.

¶20.    On February 26, 2019, Christianson made a written request for medical attention for pain in his back and difficulty walking.  Upon information and belief, Defendants indicated that a clinic appointment might be made for evaluation of Christianson's back pain.

¶21.    On March 4, 2019, Christianson was seen at Washburn Clinic for his complaints of back and leg pain. Christianson's blood pressure was not controlled and readings were 140-160's/90-100. The provider recorded his pulse was 98, blood pressure was 138/90.  Christianson was noted to have edema in his legs and high blood pressure.

¶22.    On March 5, 2019, Washburn Clinic faxed "Doctors Orders" to MCDC regarding Christianson's edema and high blood pressure with medication changes and a follow up appointment scheduled for March 19, 2019.

¶23.    On March 10, 2019, Christianson made a written request for medical attention indicating he was unable to walk and complaining of numbness and pain in his legs.  Upon information and belief, the MCDC Jailers  indicated that Christianson had been seen on March 4, 2019 and received an increase in gabapentin dosage.  Christianson's complaints were willfully ignored.  No action was taken to examine or evaluate Christianson, nor does it appear that the jail nurse, Brossart, was consulted.

¶24.    On March 19, 2019, Christianson was seen by a provider at the Washburn Clinic and was noted to have edema in his legs, high blood pressure, shortness of breath and weight gain.

¶25.    On April 3, 2019, Christianson had a high fever which was properly reported to the jail nurse, Brossart, by a correctional officer. Nurse Brossart advised jail staff to take Christianson to the Washburn Clinic.

¶26.    On April 3, 2019, Christianson was seen by a provider at the Washburn Clinic. The provider

reported edema and a spiked temperature between 102 and 105 degrees.  His systolic blood pressure was 94. This is a one hundred point differential from prior visits and constitutes a red flag when a drop of blood pressure of that magnitude exists.  Blood pressure drops, a fever and edema are signs that critically point to additional problems and potentially sepsis.

¶27.    On April 4, 2019, Christianson was given 400mg of ibuprofen at approximately 4:15am and again at 10:45pm for fever, but the MCDC Jailers failed to record or take his temperature. Abnormal temperature would demonstrate a need for medical intervention, which the MCDC Jailers should have reported to the jail nurse or other medical providers.

¶28.    On April 5, 2019, Christianson was given 1,000mg of Tylenol at approximately 5:06am for fever, but MCDC Jailers still failed to note his temperature. Defendant Wicklander noted Christianson's temperature to be elevated on April 3rd. He took no action. Approximately an hour later, his temperature was again taken by another jailer who notified the jail nurse and scheduled a clinic visit for Mr. Christianson on April 3rd. Following the clinic visit on April 3rd and until April 4th, no temperatures were taken of Christianson. On April 4th Defendant Chimel noticed Christianson's temperature was 104, but took no action other than to issue a cold pack. During this time, other jailers continued to conduct rounds and recorded no temperatures for Christianson. On April 4th at approximately 6:56 pm, Christianson's temperature was at 102.7 as reported by Defendant Valandra. No action was taken. On April 4th at 10:30 pm Defendant Chimel noted Christianson's temperature was 102 and no action was taken. On April 5th at 1:11 am, Defendant Turning-Heart notices Defendant Christianson's temperature was 102.2 and the only action taken was to administer Tylenol with no report to any nurse or medical staff. At 5:07 am on April 5th, 2019, Christianson's temperature was 102.8 and he was given Tylenol by Defendant Dunn with no other

action taken. On April 5th at 9:54 pm, Christianson's blood pressure and pulse were taken by Defendant Schumaier, no temperature was taken. Exhibit A notes these.

¶29. On April 6, 2019, Dirk Christianson was found crawling in his MCDC jail cell and was delirious.

¶30. On April 6, 2019, Dirk Christianson was taken from MCDC on an emergency basis to the Sanford Hospital in Bismarck, North Dakota. The diagnosis at that time was severe sepsis with renal failure and other system shut down.

¶31. A determination was made to amputate Christianson's left leg on April 9, 2019.

¶32. It was clear throughout this process that Christianson's condition was severe and required additional medical care.

¶33. During his incarceration between April 3, 2019 and April 6, 2019, Christianson's condition was so acute that the MCDC Jailers should have easily recognized that additional medical care was required for Christianson. MCDC Jailers failed to report Christianson's elevated temperatures to medical personnel including the jail nurse. This constitutes extreme indifference to Christianson's need for medical care.

¶34. Defendants knew via actual knowledge or from the fact that it was obvious that Christianson had serious medical needs in March and April of 2019. Those needs became more apparent when Christianson's temperature spiked between April 3 and April 6, 2019.

¶35. Defendants knew of Christianson's serious medical needs and were deliberately indifferent to Christianson thereby violating his Eighth and Fourteenth Amendment rights and causing him to become ill including unchecked infection which resulted in the amputation of his left leg.

¶36. Christianson made repeated request for medical care and they were ignored.

¶37.    Defendant MCDC Jailers failed to monitor Christianson's serious health condition, ignored his elevated temperature and failed to advise medical personnel of his condition.

## COUNT ONE - CIVIL RIGHTS VIOLATIONS
### *MCDC Jailers individually*

¶38.    Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as fully set forth herein.

¶39.    Severe sepsis and renal failure are serious medical needs.

¶40.    Defendants MCDC Jailers had a duty to provide for the safety and general well-being of Christianson, including protecting him as an inmate at MCDC.

¶41.    Defendants MCDC Jailers, under the color of state law, acted with deliberate indifference to Christianson's life-threatening medical needs and serious risk of death during his confinement at MCDC in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

¶42.    Defendants MCDC Jailers, under the color of state law, knew of and disregarded an obvious and serious risk to Christianson's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

¶43.    Defendants MCDC Jailers subjected Christianson to these deprivations of his rights either maliciously or by acting with deliberate disregard for whether Christianson's rights would be violated by the Defendants MCDC Jailers

¶44.    Christianson suffered a left leg amputation as a direct and proximate result of the acts and omissions of Defendants MCDC Jailers and Plaintiff was thereby damaged in an amount to be determined by a jury.

¶45.    In addition to the loss of his left leg, Christianson suffered over the duration of his time at

MCDC from his injury and into the future. Plaintiff is entitled to recover damages for his pain and suffering.

¶46.    Christianson also suffered a loss of economic opportunity and the loss of the enjoyment of life due to the acts and omissions of Defendants MCDC Jailers and Plaintiff is entitled recover these damages and he will have ongoing damages for his care and future and past medical expenses.

¶47.    Punitive damages are available against Defendants MCDC Jailers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

¶48.    Plaintiff is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C §1988.

### COUNT TWO - CIVIL RIGHTS VIOLATIONS
*MCDC Jailers, individually and as Trained Medical Staff*

¶49.    Plaintiff realleges and incorporates by reference herein each and every allegation contained in each paragraph above as fully set forth herein.

¶50.    Severe sepsis and renal failure are serious medical needs.

¶51.    Defendants MCDC Jailers had a duty to provide for the safety and general well-being of Christianson, including protecting him as an inmate at MCDC. MCDC Jailers had received training on the medical and first aid needs of detainees and ignored that training when providing care to Plaintiff.

¶52.    Defendants MCDC Jailers, under the color of state law, acted with deliberate indifference to Christian son's life-threatening medical needs and serious risk of death during his confinement at MCDC in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

¶53.    Defendants MCDC Jailers, under the color of state law, knew of and disregarded an obvious

and serious risk to Christianson's health and safety and acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

¶54. Defendants MCDC Jailers subjected Christianson to these deprivations of his rights either maliciously or by acting with deliberate disregard for whether Christianson's rights would be violated by the Defendants MCDC Jailers

¶55. Christianson suffered a left leg amputation as a direct and proximate result of the acts and omissions of Defendants MCDC Jailers and Plaintiff was thereby damaged in an amount to be determined by a jury.

¶56. In addition to the loss of his left leg, Christianson suffered over the duration of his time at MCDC from his injuries and into the future. Plaintiff is entitled to recover damages for his pain and suffering.

¶57. Christianson also suffered a loss of economic opportunity and the loss of the enjoyment of life due to the acts and omissions of Defendants MCDC Jailers and Plaintiff is entitled recover these damages and he will have on going damages for his care and future and past medical expenses.

¶58. Punitive damages are available against Defendants MCDC Jailers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

¶59. Plaintiff is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C §1988.

## DEMAND FOR JURY TRIAL

¶60. Plaintiff, Dirk Christianson, herein demands a trial by jury of the maximum number of jurors permitted by law.

## PRAYER FOR RELIEF

¶61.    **WHEREFORE**, Plaintiff prays for a judgment against the Defendants as follows:

1.    As to Count One, a money judgment against Defendants MCDC Jailers for compensatory and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

2.    As to Count Two, a money judgment against Defendants MCDC Jailers for compensatory and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interest;

3.    As to all Counts, money judgments against Defendants for economic damages in an amount to be determined by a jury, but no less than $75,000.00; for non-economic damages representing Plaintiff's suffering, mental anguish, and emotional distress, in an amount to be determined by a jury, but no less than $75,000.00; together with Plaintiff's costs, attorneys' fees and interest; and

4.    For such other and further relief as the Court deems just and equitable.

Dated this  31st  day of March, 2025

LARSON LAW FIRM, P.C.

/s/ Mark V. Larson
**Mark V. Larson (ID #03587)**
ATTORNEY FOR PLAINTIFF
1020 North Broadway
PO Box 2004
Minot, ND 58702
(701) 839-1777
larslaw@srt.com

-10-