IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Dirk Christianson, | ) |
| | ) |
| Plaintiff, | )  **ORDER GRANTING DEFENDANTS'** |
| | )  **MOTION TO DISMISS** |
| vs. | ) |
| | ) |
| Daniel B. Wicklander, James Valandra, | ) |
| Jeffrey Turning Heart, John Martin Chimel, | )  Case No. 1:25-cv-072 |
| Amanda Dunn, Jesse Feist, Tristan | ) |
| Weinfortner, Samantha Kamphuis, Jericho | ) |
| Swanson, and Carissa Schumaier, | ) |
| individually and as McLean County | ) |
| Correctional Officers and as McLean | ) |
| County Detention Center Medical Staff, | ) |
| | ) |
| Defendants. | ) |

Before the Court is the Defendants' ("the Correctional Officers") motion to dismiss filed on June 3, 2025. See Doc. No. 18. The Plaintiff filed a response in opposition to the motion on July 11, 2025. See Doc. No. 23. The Defendants filed a reply on July 25, 2025. See Doc. No. 26. For the reasons set forth below, the motion is granted.

I.    **BACKGROUND**

This case arises from an infection the Plaintiff, Dirk Christianson, suffered in 2019 while incarcerated at the McLean County Detention Center ("MCDC"), which ultimately resulted in the amputation of his left leg. Christianson was incarcerated at MCDC from December 22, 2018, through April 6, 2019.

Christianson alleges he had ongoing medical issues throughout his incarceration. On April 3, 2019, Christianson had a fever. A correctional officer reported the fever to the jail nurse, who advised jail staff to take Christianson to the Washburn Clinic. Christianson was seen by a provider

1

at the Washburn Clinic that day. Following the appointment, MCDC staff provided Christianson with medications and a cold pack, and monitored his temperature, blood pressure, and heart rate until April 6, 2019. According to the complaint, on April 6, 2019, Christianson was found crawling in his jail cell and was delirious. Christianson was then transported to Sanford Hospital in Bismarck, North Dakota, where he was initially diagnosed with sepsis and renal failure. On April 9, 2019, Christianson's left leg was amputated to control an infection.

On April 1, 2021, Christianson initiated an action in federal court against McLean County, a Political Subdivision of the State of North Dakota; Underwood Clinic, P.C. d/b/a Washburn Clinic; Jerry "JR." Kerzmann, individually, and as Sheriff of McLean County; Kerri Benning, FNP-C, individually, and as a Health Care Authority; Ashley Brossart, RN, individually, and as Contract Nurse; John Doe 1-4, individually, and as McLean County Correctional Officers; John Doe 5-8, individually, and as McLean County Detention Center Medical Staff. See Case No. 1:21-cv-073 ("Christianson I"). Christianson brought claims arising from his incarceration at MCDC and the amputation of his left leg. Among other claims, Christianson asserted claims under 42 U.S.C. § 1983 against Sheriff Kerzmann, individually, Nurse Brossart, and John Doe MCDC correctional officers and medical staff. On January 16, 2025, Christianson filed a motion for leave to file an amended complaint. See Doc. No. 93 in Christianson I. Christianson sought leave to amend his complaint to add ten current and former MCDC correctional officers, namely: Daniel B. Wicklander, James Valandra, Jeffrey Turning Heart, John Martin Chimel, Amanda Dunn, Jesse Feist, Tristan Weinfortner, Samantha Kamphuis, Jericho Swanson, and Carissa Schumaier. These are the same Defendants Christianson named in the present action. On February 18, 2025, the Court denied Christianson's motion as untimely. See Doc. No. 102 in Christianson I. The Court found that Christianson "deposed seven of the ten proposed new defendants. During the

2

depositions, the Plaintiff had the opportunity to determine whether the individuals were the John Doe defendants he sought and either failed to do so at that time or failed to move to amend his complaint upon discovering their identities." Id. The Court concluded that allowing Christianson to add ten new defendants after the more than three-year long discovery period would be prejudicial to the defendants. Id.

On April 23, 2025, the Court granted the defendants' motions for summary judgment and dismissed Christianson's claims of deliberate indifference. See Doc. No. 103 in Christianson I. The Court found that "Christianson's serious medical need was not sufficiently obvious to jail personal and eluded trained medical professionals." The Court also concluded that Sheriff Kerzmann and Nurse Brossart were entitled to qualified immunity from Christianson's Section 1983 deliberate indifference claims. Further, the Court incorporated by reference its order denying leave to file an amended complaint and held that "[d]ue to the Plaintiff's failure to timely provide the identity of the John Doe Defendants and timely amend his complaint to join them, summary judgment is granted as to all claims against the John Doe Defendants." Id. Christianson's appeal of the order granting summary judgment is currently pending before the Eighth Circuit Court of Appeals. See Doc. No. 112 in Christianson I.

On March 31, 2025, Christianson brought the present action. See Doc. No. 1. The 42 U.S.C. § 1983 claims Christianson asserts against the Defendants in this action are identical to the claims he brought against the John Doe defendants in *Christianson I*. The Section 1983 deliberate indifference claims are bought against the MCDC Correctional Officers in their individual and official capacities. On June 3, 2025, the Defendants filed a motion to dismiss, based on res judicata, collateral estoppel, and failure to state a claim upon which relief can be granted. See Doc. No. 18. The motion has been fully briefed and is ripe for disposition.

II.    **STANDARD OF REVIEW**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Id. at 681.

Detailed factual allegations are not necessary under the Rule 8 pleading standard, rather a plaintiff must set forth grounds of its entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement." Ashcroft, 556 U.S. at 678 (2009). The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling plaintiff to relief. Ulrich v. Pop Cnty, 715 F.3d 1054, 1058 (8th Cir. 2013).

4

**III.    LEGAL ANALYSIS**

The Defendants argue Christianson's claims are barred by the doctrine of res judicata because the claims in this case are based on the same events as *Christianson I*. It is well-established by the Eighth Circuit Court of Appeals that the application of res judicata in a diversity action is a question of substantive law controlled by state common law. Lane v. Sullivan, 900 F.2d 1247, 1250 (8th Cir.) cert. denied, 498 U.S. 847 (1990); Hillary v. Trans World Airlines, 123 F.3d 1041 (8th Cir. 1997). North Dakota follows the general common law of res judicata. Geraci v. Women's All., Inc., 547 F. Supp. 2d 1022, 1026 (D.N.D. 2008). "Res judicata is a term often used to describe such doctrines as merger, bar, and collateral estoppel, or the more modern terms of claim preclusion and issue preclusion." Borsheim v. O & J Properties, 481 N.W.2d 590, 596 (N.D.1992).

Res judicata, or claim preclusion, "prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction." Id. (quoting Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 383 (N.D.1992)). The doctrine applies even if subsequent claims are based upon different legal theories. Ungar v. North Dakota State Univ., 721 N.W.2d 16, 21 (N.D.2006). For the affirmative defense of res judicata to provide a basis for dismissal under Rule 12(b)(6), the defense must be "apparent on the face of the complaint." C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 764 (8th Cir. 2012). The face of the complaint includes "public records and material embraced by the complaint and materials attached to the complaint." Id.

The Eighth Circuit has established a four-prong test to determine the applicability of res judicata.

> A claim will be held to be precluded by a prior lawsuit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper

>  jurisdiction; (3) both suits involve the same parties; and (4) both suits are based upon the same claims or causes of action. Furthermore, the party against whom res judicata is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect.

Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir.1998). Each of these elements are met in this case.

Christianson does not contest the first res judicata element. In *Christianson I*, the Court granted summary judgment against Christianson. Under North Dakota law, "[a] summary judgment is a final judgment and has the effect of adjudicating the merits of the particular claim." Trottier v. Bird, 2001 ND 177, ¶ 8 635 N.W.2d 157. Accordingly, the first lawsuit resulted in a final judgment on the merits.

The second element requires the first lawsuit to be based upon proper jurisdiction. Christianson argues the second factor is not met because the Court did not have personal jurisdiction over the Correctional Officers in *Christianson I*. Specifically, he argues that the subsequent action against the Correctional Officers is not precluded because the John Doe defendants were not served in *Christianson I*. Christianson misconstrues this res judicata element. This element only requires that "the first suit was based on proper jurisdiction." Costner, 153 F.3d at 673. Whether jurisdiction in the first lawsuit was obtained over the defendants sought to be sued in a subsequent lawsuit is irrelevant. Subject matter jurisdiction was established under 28 U.S.C. § 1331 in *Christianson I*. Personal jurisdiction over Christianson existed by virtue of filing the lawsuit in *Christianson I*. Personal jurisdiction over each defendant in *Christianson I* was established when each of the defendants participated in the lawsuit without challenging personal jurisdiction. See Yeldell v. Tutt, 913 F.2d 533 (8th Cir. 1990). Further, the Eighth Circuit Court of Appeals has previously determined res judicata bars re-litigation of claims even when the

6

defendants in the second lawsuit were not named defendants in the first lawsuit. Elbert v. Carter, 903 F.3d 779 (8th Cir. 2018) (citations omitted).

The third element requires that both suits involve the same parties. Christianson and the Correctional Officers dispute whether privity exists between the defendants in *Christianson I* and the Defendants in this case. For purposes of res judicata, "[a] party is identical when it is the same party that litigated a prior suit or when a new party is in privity with a party that litigated a prior suit. Privity exists when two parties to two separate suits have a close relationship bordering on near identity." Harmon Indus., Inc. v. Browner, 191 F.3d 894, 903 (8th Cir. 1999) (internal quotation marks omitted). Privity exists when parties are "so closely related" to the defendants in the first lawsuit and "their interests are so nearly identical" that it is "fair to treat them as the same parties for determining the preclusive effect" of the judgment in the first lawsuit. Ruple v. City of Vermillion, S.D., 714 F.2d 860, 862 (8th Cir. 1983). "Privity is not dependent on the subjective interests of the individual parties." Id.

The Eight Circuit Court of Appeals addressed privity in *Elbert*, which involved a very similar procedural history regarding Section 1983 claims. 903 F.3d 779 (8th Cir. 2018).  In the first lawsuit, Elbert brought claims in federal court under Section 1983 against the City of Kansas, Missouri, the Kansas City Board of Police Commissioners, and various Kansas City employees, including police officers. Elbert identified the Kansas City police offers as "John Doe defendants" in his complaint. Elbert requested leave to amend his pleadings approximately two months after the deadline. In the proposed amended complaint Elbert sought to substitute twenty-one named individual defendants, mostly Kansas City police officers, for the twenty-one John Doe defendants. The district court denied the motion as untimely. Thereafter, the district court dismissed Elbert's claims for failure to state a claim. While the first case was still pending, Elbert filed an action in

Missouri state court against sixteen Kansas City police officers, all of whom he unsuccessfully sought to substitute for John Dohn defendants in the first action. The claims in the second action arise from the same events as the first action. The defendants removed the case to federal court. The district court dismissed Elbert's claims in the second action on the basis of res judicata. In affirming the district court, the Eighth Circuit concluded that privity existed between the defendants in the first and second action. The Eighth Circuit explained that "[t]he term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term …'[P]rivity' is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." Id. at 782-82 (internal quotation marks and citations omitted). Further, the doctrine of res judicata is not limited to claims that were actually raised in the first suit. The doctrine of res judicata, "precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action." Id. at 782 (emphasis added). The Eighth Circuit concluded, "[t]here is no good reason why Elbert should have a second chance to add these claims and defendants." Id. at 784.

Under *Elbert*, the Correctional Officers in this case are clearly in privity with the defendants in *Christianson I* for purposes of res judicata. Christianson's claims against the Correctional Officers could have been raised in *Christianson I*. The Court denied Christianson's motion to amend the complaint to name the officers in *Christianson I* because the request was untimely, and Christianson had the relevant information to name the John Doe defendants at an earlier date. Christianson could have named the John Doe Defendants in the first action but failed to do so in a timely manner. Res judicata bars Christianson from re-litigating the claims he could have timely brought against the Correctional Officers in *Christianson I*. See Elbert v. Carter, 903

8

F.3d 779 (8th Cir. 2018) ("allowing [the plaintiff] to circumvent the district court's ruling on his untimely motion for leave to amend in the first action by bringing a second action against the new defendants would unreasonably burden the parties and the court.) Accordingly, the Court finds the Defendants in this case are in privity with the defendants in *Christianson I*.

The fourth res judicata element requires that both actions are based upon the same claims or causes of action. Christianson does not contest that the actions are based on the same claims. "Whether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." Elbert, 903 at 782 (8th Cir. 2018) (citations omitted). The identical Section 1983 claims in *Christianson I* and the present action arise out of the same operative facts regarding Christianson's incarceration at MCDC and the amputation of his left leg. Therefore, the Court finds that res judicata bars Christianson's claims in this action.

In addition to the Court's summary judgment order in *Christianson I*, the Court's denial of leave to file Christianson's proposed amended complaint in *Christianson I* provides a basis to preclude re-litigation of those claims. In *Pro. Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030 (8th Cir. 2003), the Eighth Circuit Court of Appeals held,

> The denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action. Denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading. This is so even when denial of leave to amend is based on reasons other than the merits, such as timeliness.

Pro. Mgmt., 345 F.3d at 1032 (8th Cir. 2003) (internal quotation marks and citations omitted). See also King v. Hoover Grp., Inc., 958 F.2d 219 (8th Cir. 1992) ("It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading.) In this case, Christianson's proposed amended complaint that the Court denied

leave to file in *Christianson I* asserted identical causes of action against the exact same defendants sued in this case and requested identical damages. Thus, the Court's denial of Christianson's motion to amend his complaint in *Christianson I* is a final judgment on the merits. The Court concludes res judicata bars Christianson's claims against the Correctional Officers in this case. The Defendants' motion to dismiss is granted[1].

IV.   **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendants' motion to dismiss (Doc. No. 18) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 29th day of January, 2026.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court

---

[1] Because res judicata bars the Plaintiff's claims, the Court need not analyze his deliberate indifference claims and the Defendants' qualified immunity under the Rule 12(b)(6) standard for failure to state a claim. Nevertheless, the Court emphasizes that it previously addressed the Correctional Officer's subjective knowledge in its order granting summary judgment in *Christianson I*. The Court held that "Christianson's serious medical need was not sufficiently obvious to jail personal [sic]" and "the facts in this case do not show intentional denial or delay in access to medical care." See Doc. No. 103 in Christianson I.